**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| F.O.B. INSTRUMENTS, LTD. | * | |
| Plaintiff, | * | |
| | * | Civil Action No. AW-06-1412 |
| KROWN MANUFACTURING, *et al.* | * | |
| Defendants. | * | |
| | ***** | |

**MEMORANDUM OPINION**

F.O.B. Instruments, Ltd. ("Plaintiff" or "FOB") brings this action against Defendants Krown Manufacturing, Inc. ("Krown"), Compu-TTY, Inc. ("Compu-TTY"), Sidney Ander, and Barbara Ander (collectively, "Defendants") alleging patent infringement, trade dress infringement, and unfair competition. The case is now before the Court on motions for summary judgment regarding trademark infringement (Paper No. 39), invalidity and validity of the patent-in-suit (Paper Nos. 40 and 60, respectively), patent infringement (Paper No. 41), and willful patent infringement (Paper No. 43). Also before the Court are two motions to strike (Paper Nos. 59 and 66). The Court has reviewed the entire record, including the various pleadings and exhibits with respect to the instant motions. A hearing on the motions was held on August 22, 2007. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated on the record and more fully below, the Court will grant the motions for summary judgment with respect to trademark infringement, patent infringement, and patent validity, and deny the motions for summary judgment regarding the invalidity of the patent and willful patent infringement.[1] The Court will also grant the motion to strike the declaration of Daniel

---

[1] The Court's grant of summary judgment as to trademark infringement and patent infringement will not extend to the individual Defendants. This exclusion is without prejudice to the right of Plaintiff reasserting the request for judgment against the individual Defendants

M. Cislo and grant the motion to strike the declaration of Deborah F. Sirias.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff has been in the business of selling vibrating alarm clocks since as early as 1991. Plaintiff's clocks are sold under the trademark SHAKE AWAKE®. Since as early as 1992, Plaintiff has used and continues to use the phrase "A BETTER WAY TO GREET THE DAY!" in connection with the sale and distribution of the SHAKE AWAKE® alarm clocks. Plaintiff owns a federal trademark registration on the phrase "A BETTER WAY TO GREET THE DAY." Defendants are sellers and suppliers of small consumer electronics intended primarily for the hearing impaired and visually impaired market. While separately incorporated, Defendant Krown and Defendant Compu-TTY are commonly owned by Defendants Sidney and Barbara Ander. Compu-TTY has sold and distributed electronic products since 1982, and Krown has sold distributed electronic products since 1995. In the early to mid 1990s, Compu-TTY became a customer of Plaintiff and sold the SHAKE AWAKE® vibrating alarm clock.

On February 18, 1992, the United States Patent and Trademark Office ("PTO") issued United States Patent No. 5,089,998 (the '998 patent) entitled "Vibrating and Audible Alarm Clock" to Richard Rund. The '998 patent discloses a battery operated alarm clock that allows a user to selectively switch between vibratory and audible alarm modes. The SHAKE AWAKE® clock, as disclosed in the '998 patent, fits within a housing that is small enough to be placed under a user's pillow. FOB is the owner of the '998 patent by assignment. Since as early as the fall of 2003, Defendants have imported, sold, and offered to sell battery operated travel alarm clocks., including the BUZZ clock and the Pillow Vibrator (collectively, "the accused products").

---

should the record be developed more fully as to their liability.

In the spring of 2006, FOB became aware of the accused products listed on Defendants' websites. Plaintiff also learned that Defendants were using the phrase "A BETTER WAY TO GREET THE DAY" in connection with the sale and marketing of the accused products. On June 1, 2006, Plaintiff mailed certified letters to Krown and Compu-TTY, notifying Defendants of their infringement of the '998 patent and demanding that Defendants immediately cease and desist from their infringing conduct. Three days later, on June 4, 2006, Plaintiff filed a federal trademark application with the PTO on the phrase "A BETTER WAY TO GREET THE DAY", alleging January 16, 1992 as the date of first use in commerce.[2] Two days after filing for trademark protection on the "A BETTER WAY TO GREET THE DAY" mark, Plaintiff filed its Complaint in this Court, alleging patent infringement, trade dress infringement, and unfair competition.

## STANDARD OF REVIEW

Summary judgment is only appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). In a motion for summary judgment, the moving party discharges its burden by showing an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (internal citations omitted). However, the party who bears the burden of persuasion on a particular claim must present legally sufficient evidence to support each element of his claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." To defeat a motion for

---

[2] On March 27, 2007, the PTO granted registration for the mark (Reg. No. 3,222,903).

summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## ANALYSIS

A. Trademark Infringement

Section 43(a) of the Lanham Act protects against the use of words and other marks in connection with goods and services if such use is likely to cause confusion or mistake as the source of those goods and services. *See* 15 U.S.C. § 1125(a). In order to prevail on a Section 43(a) claim, Plaintiff must show that it owns "a valid, protectable trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers."[3] *Synergistic Int'l, LLC v. Jody Fine Korman*, 470 F.3d 162, 170 (4th Cir. 2006). Plaintiff claims that it has used and continues to use the phrase "A BETTER WAY TO GREET THE DAY" since at least 1992. Defendants argue that summary judgment should be denied because an issue of material fact exist as to whether Plaintiff indeed used the mark since 1992. In support of this contention, Defendants present the declaration of Defendant Sydney Ander, which states that, in or about 1994, Defendant

---

[3] The analysis of trademark infringement and unfair competition under Maryland law mirrors the analysis under the Lanham Act. *See Communications Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245, 1250-51 (4th Cir. 1970) (interpreting Maryland law). Both inquiries center around the question of whether consumers are likely to be confused by the use of the mark.

4

was a seller of Plaintiff's SHAKE AWAKE® alarm clocks and that Plaintiff was not using the "A BETTER WAY TO GREET THE DAY" mark in connection with clocks. Decl. of Sydney Ander ¶ 4. Defendants also present the declaration of Sam Dunn, who allegedly conceived of the idea to use the phrase "a better way to greet the day" after having seen the phrase on a menu at a Denny's restaurant sometime in 2005. Decl. of Sam Dunn ¶ 6. Dunn goes on state that he performed a GOOGLE search on the phrase, and did not notice that Plaintiff was using the phrase in connection with its alarm clocks. *Id.* In support of this contention, Mr. Dunn attaches to his declaration an undated print out of a GOOGLE search on the phrase, which he claims is a "true and correct" copy of the GOOGLE search performed in 2005.[4]

Defendants' opposition to Plaintiff's ownership of the mark is futile. The question of whether Plaintiff has used the mark since 1992 is not directly relevant to the issue now before the Court. The initial question is whether Plaintiff was using the mark at some time prior to Defendants' adoption of the mark. Defendants claim that they decided to use the mark in or about November 2005. The GOOGLE results relied on by Defendants is fatal to Defendants' arguments. The undated search results, which Defendants claim to be the true copy of the results they relied upon in adopting the mark, clearly show that Plaintiff had employed the use of the mark in a trademark sense prior to Defendants' adoption of the mark. Therefore, there is no genuine dispute here that Plaintiff owns the "A BETTER WAY TO GREET THE DAY" mark.

The next question is whether Defendants' use of the mark is likely to cause confusion among consumers. The Fourth Circuit has identified seven factors to be considered in determining whether

---

[4] The Court finds it quite troublesome that Defendants have submitted the GOOGLE search results as a true copy of what they relied on in adopting the mark when Defendants' own product using the mark is included in the search results.

there is a likelihood of confusion:

    1) the strength or distinctiveness of Plaintiff's mark;

    2) the similarity of Plaintiff's mark and Defendants' mark;

    3) the similarity of the goods and services that the marks identify;

    4) the similarity of the facilities the two parties use in their businesses;

    5) the similarity of the advertising the two parties use;

    6) Defendants' intent; and

    7) actual confusion.

*Id.* (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 (4th Cir. 1995)). Although no one factor is dispositive of the likelihood of confusion inquiry, the Court will address each of these factors in turn.

Distinctiveness

Under the Lanham Act, a trademark registration serves as *prima facie* evidence of the validity of the registered mark. *See* 15 U.S.C. § 1057(b). "Because the PTO may not register a generic mark, the fact that a mark is registered is strong evidence that the mark satisfies the statutory requirements for the distinctiveness necessary for trademark protection." *Retail Servs. v. Freebies Publ'g*, 364 F.3d 535, 542 (4th Cir. 2004). Having obtained a registration on the "A BETTER WAY TO GREET THE DAY" mark, Plaintiff has met its burden of production on the distinctiveness requirement. Defendants have not submitted any evidence sufficient to rebut the presumption of validity. Instead, Defendants claim that the registration is invalid because Plaintiff misrepresented to the PTO that the Plaintiff has used the mark in connection with its products since 1992. Even if the Court entertains Defendants' attenuated argument, the result remains unfavorable for

6

Defendants.

In the absence of the trademark registration, Plaintiff has the burden of proving that the mark is distinctive. Defendants claim that the mark is merely descriptive. Descriptive marks "merely describe a function, use, characteristic, size, or intended purpose of the product." *Id.* at 539 (internal quotation omitted). Descriptive marks must acquire secondary meaning in order to be eligible for trademark protection. *Id.* Plaintiff argues that the mark is suggestive. Suggestive marks are eligible for trademark protection without the showing of secondary meaning. *Id.* A mark is suggestive if it "connotes, without describing, some quality, ingredient, or characteristic of the product." *Id.* (internal quotation omitted). "Generally speaking, if the mark imparts information directly, it is descriptive. If it stands for an idea which requires some operation of the imagination to connect it with the goods, it is suggestive." *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1528 (4th Cir. 1984) (quoting *Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366, 379 (7th Cir. 1976)). There can be no doubt here that the phrase "a better way to greet the day" does not describe the function, use, characteristics, size, or purpose of Plaintiff's alarm clocks. Rather, it requires a subtle mental leap in the mind of the consumer in order to connect the phrase with the qualities of Plaintiff's vibratory and audible alarm clock. Therefore, Plaintiff's mark is suggestive and has the required distinctiveness to warrant trademark protection.

Similarity of the Marks and Goods

Defendants concede that the two marks are identical, so this factor weighs in favor of a finding of likelihood of confusion. Plaintiff claims that the accused products are "knock offs" of Plaintiff's SHAKE AWAKE® alarm clocks. Defendants apparently concede that the goods in question here are also identical or similar. *See* Def.'s Opposition to Mot. for Summ. J. at 7.

Therefore, this factor also weighs against Defendants.

Similarity of Facilities and Advertising Channels of Commerce

Defendants claim that, unlike Plaintiff, Defendants' business is primarily a wholesale business and relies on other distributors to sell its products on a retail basis. However, Plaintiff claims that Defendants use the internet to advertise, market, and sell the accused products. Both parties have company websites that are used to promote the sale of the parties' respective products. Furthermore, Plaintiff claims that many of the resellers of the SHAKE AWAKE® clock are also resellers of Defendants' clocks. *See* Decl. of Richard Rund ¶ 11. This contention is not disputed by Defendants. Because both parties employ similar channels of commerce in connection with the sale of similar goods, Defendants' use of the mark increases the likelihood of confusion in the minds of consumers.

Defendants' Intent

Defendants claim that Sam Dunn independently conceived of the idea to use the mark without knowledge of Plaintiff's use of the mark. Plaintiff contends that as a former customer and seller of the SHAKE AWAKE® alarm clocks, Defendants were well aware of Plaintiff's use of the mark and intentionally decided to use the identical mark on identical goods. Because Defendants' intent is not dispositive of the likelihood of confusion issue, the Court views this factor as neutral between the parties.

Actual Confusion

Plaintiff has presented no evidence of actual confusion. However, "[t]he test [for trademark infringement] is likelihood of confusion; evidence of actual confusion is unnecessary." *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 463 (4th Cir. 1996). Therefore, the Court also views this

factor as a neutral factor between the parties.

Given the overwhelming weight of the evidence in favor of a finding of trademark infringement, and there being no genuine issue of material facts in dispute, the Court will grant Plaintiff's motion for summary judgment.[5]

B.  Patent Infringement

The patent infringement analysis consists of two steps: the Court must first construe the scope of the patent claims, then determine whether the accused device is covered by the claims of the patent. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).  Claim construction is a question of law for the Court. *Id.*  Only those claim terms that are in controversy need be construed, and only to the extent necessary to resolve the controversy. *Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).  The second step is a factual question. *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1405-06 (Fed. Cir. 1996).  However, the Court may resolve this factual inquiry on summary judgment. *Barmer Maschinenfabrik v. Murata Machinery, ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984).

A means-plus-function limitation under 35 U.S.C. § 112, ¶ 6, allows a patentee to recite a function to be performed as a claim limitation rather than explicitly identifying within the language of the claim the structure or materials for performing the function. *Omega Engineering, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1321 (Fed. Cir. 2003).  Claims written in the means-plus-function

---

[5] Plaintiff asks the Court to deem this an exceptional case pursuant to 15 U.S.C. § 1117, which would entitle Plaintiff to increased damages.  However, because the record suggests that Defendants ceased using the marks in connection with the accused products shortly after the filing of this lawsuit, the Court will not find that this is an exceptional case.

format are construed to cover the structure or materials described in the patent's specification for accomplishing the claimed function. *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1264 (Fed. Cir. 1999). The Supreme Court has explained that "Rule 56(e) provides that, when a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). In his expert report, Dr. Barbe analyzes each claim term of Claim 1 of the '998, identifying the particular structure described in the specification for the claim terms presented in means-plus-function format. Dr. Barbe also describes how each element of the claimed invention is present in the accused products. Defendants have come forth with no evidence to contradict Dr. Barbe's conclusions.[6] Instead, Defendants simply present lawyer arguments as to perceived deficiencies in Dr. Barbe's report. The Federal Circuit has made clear that "[a]ttorney argument is no substitute for evidence." *Enzo Biochem v. Gen-Probe, Inc.*, 424 F.3d 1276, 1284 (Fed. Cir. 2005). Plaintiff has satisfied its burden of production on the issue of patent infringement. Because Defendants have not come forth with any evidence to refute Plaintiff's claim, Defendants have failed to establish a genuine issue of material fact sufficient to defeat summary judgment. Therefore, Plaintiff's motion will be granted.

C.  Willful Patent Infringement

To prevail on its willfulness claim, FOB must show that Defendants had no reasonable basis for reaching a good faith conclusion that the '998 patent was invalid or unenforceable, or that Defendants' use or sale of the accused products avoided infringement of the '998 patent.

---

[6] At the August 22, 2007 Motions Hearing, Defendants admitted that they have no evidence of non-infringement.

Willfulness is based upon the principle that once a defendant "has actual notice of another's patent rights, he has an affirmative duty to exercise due care to determine whether or not he is infringing." *Underwater Devices Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1389 (Fed. Cir 1983). The question of willfulness involves "consideration of the totality of circumstances." *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GMBH v. Dana Corp.*, 383 F.3d 1337, 1342-43 (Fed. Cir. 2004). The determination of willfulness necessarily involves questions of intent and the weighing of credibility of witnesses. *See Liquid Dynamics Corp. v. Vaughan Company, Inc.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006) (willfulness is an "intent-implicating question"). Therefore, the Court is obviously hesitant to make a willfulness determination on the pleadings and papers alone.

Furthermore, Defendants have alleged facts that would make the grant of summary judgment on the willfulness issue improper. Particularly, Defendants have produced some evidence that they began to investigate the scope of the patent once they received Plaintiff's cease and desist letters Defendants have also produced some evidence that Defendants eventually stopped selling the accused products after they were served with the Complaint in this case. *See* Decl. of Sydney Ander. These factors weigh against a finding of willfulness and therefore make improper the grant of summary judgment in favor of Plaintiff on the question of willfulness. Furthermore, on August 20, 2007, the Federal Circuit issued its opinion in *In re Seagate Technology, Inc.*, 2007 U.S. App. LEXIS 19768 (Fed. Cir. 2007), which abolished the affirmative duty of care to avoid infringement standard and announced that a finding of willful infringement requires at least a showing of objective recklessness. This heightened standard for willfulness butresses the Court's decision to

deny Plaintiff's motion for summary judgment on willfulness.[7]

D.  Invalidity/Validity of the '998 Patent

The parties filed cross-motions for summary judgment on the issues of invalidity and validity of the '998 patent (Paper Nos. 40 and 60, respectively).  An issued patent is afforded a presumption of validity.  *See* 35 U.S.C. § 282.  This presumption can only be overcome by clear and convincing evidence.  *Metabolite Labs, Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1366 (Fed. Cir. 2004).  In their motion for summary judgment as to invalidity, Defendants assert that the '998 patent is invalid as the invention would have been obvious to one of ordinary skill in the art at the time of the invention.[8]  *See* 35 U.S.C. § 103.  In support of the motion, Defendants offer the declaration of Daniel Cislo, a registered patent attorney.  Cislo concludes that the '998 patent is rendered obvious in light of U.K. Patent No. 2,205,665 ('665 patent) and U.S. Patent No. 4,352,091 ('091 patent ).[9]  At the Motions Hearing, counsel for Plaintiff argued that the inner circuitry of the '091 patent and '665 patent would not only dissuade one of ordinary skill in the art from combining the two

---

[7] Defendants submit the declaration of Deborah F. Sirias in support of their Opposition to the Motion for Summary Judgment of Willful Infringement.  Plaintiff has moved to strike this declaration (Paper No. 66) on the grounds that the declaration is not based on personal knowledge.  The Court agrees with Plaintiff and will grant the motion to strike.

[8] The parties agree that the only issue of validity is centered around the question of obviousness.

[9] Cislo's declaration is the subject of the pending Motion to Strike (Paper No. 59). Although Defendants argue that Cislo, as a Systems Engineer, is one of ordinary skill in the art with respect to the technology involved in the '998 patent, at the Motions Hearing, counsel for Plaintiff convinced the Court that Cislo is not sufficiently qualified to offer helpful expert testimony on legal questions such as obviousness.  In the past, this Court has specifically excluded "expert" testimony of patent attorneys on legal questions such as patent infringement and claim construction.  *See*, *e.g.*, *Buckley v. Airshield Corp.*, 116 F. Supp. 2d 658 (D. Md. 2000).  The Section 103 question now before the Court on summary judgment is no different. The Court sees no reason to depart from its prior approach of excluding this type of testimony from patent attorneys.  As such, the motion to strike Cislo's declaration will be granted.

references to arrive at the invention of the '998 patent, but even if the references were combined, the combination would not result in the alarm clock claimed in the '998 patent. This argument was supported by the expert report of Dr. Barbe. *See* Rebuttal Expert Report of Dr. Barbe at 11. Absent the declaration of Cislo, Defendants have no other evidence of invalidity. Although the Court will grant the motion to strike Cislo's declaration, the Court does not believe that Cislo's declaration alone would be sufficient to sustain Defendants' burden of clear and convincing evidence. Without Cislo's declaration, however, Defendants do not even come close to establishing that they are entitled to judgment as a matter of law on the issue of invalidity. As such, Defendants' motion for summary judgment on invalidity will be denied.

Defendants' reliance on Cislo's declaration is also problematic in their attempt to thwart Plaintiff's motion for summary judgment as to validity. Stripped of Cislo's testimony, Defendants have no evidence to combat the statutory presumption of validity. Although the Supreme Court has invited a more "common sense" approach to the obviousness analysis, *See KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (April 30, 2007), Defendants have not submitted sufficient evidence to warrant a trial on this issue. Summary judgment is designed to "avoid an unnecessary trial." *EMI Group North America, Inc. v. Intel Corp.*, 157 F.3d 887, 891 (Fed. Cir. 1998). As such, the Court will grant Plaintiff's motion for judgment as to the validity of the '998 patent.

## **CONCLUSION**

For the reasons stated above, the Court will grant the motions for summary judgment with respect to trademark infringement, patent infringement, and patent validity, and deny the motions

for summary judgment regarding the invalidity of the patent and willful patent infringement.[10] The Court will also grant the motion to strike the declaration of Daniel M. Cislo and grant the motion to strike the declaration of Deborah F. Sirias. An Order consistent with this Memorandum Opinion will be filed separately.


<u>August 29, 2007</u>                                                                 <u>         /s/                          </u>
Date                                                                                     Alexander Williams, Jr.
                                                                                         United States District Judge

---

[10] The Court's grant of summary judgment as to trademark infringement and patent infringement will not extend to the individual Defendants. This exclusion is without prejudice to the right of Plaintiff reasserting the request for judgment against the individual Defendants once the record is developed more fully as to their liability.